IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

JUDY UPSHAW,                          )
                                      )
      Plaintiff,                      )
                                      )
v.                                    )      Case No. 3:22-cv-500-SMD
                                      )
MARTIN J. O'MALLEY,[1]                )
Commissioner of Social Security,      )
                                      )
      Defendant.                      )

## **OPINION & ORDER**

Plaintiff Judy Upshaw ("Upshaw") applied for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") on June 17, 2019, alleging disability beginning March 15, 2019. Tr. 178, 179. Upshaw's application was denied at the initial administrative level. Tr. 248. She then requested and received a hearing before an Administrative Law Judge ("ALJ"), who found on January 26, 2020, that she was not disabled. Tr. 14-36, 95. Upshaw appealed to the Social Security Appeals Council ("Appeals Council") where she submitted additional evidence in support of her disability, but the Appeals Council denied review. Tr. 1. Therefore, the ALJ's order became the final decision of the Commissioner of the Social Security Administration ("Commissioner"). *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Upshaw appeals that decision under 42 U.S.C. § 405(g). For the reasons that follow, the undersigned AFFIRMS the

---

[1] On December 18, 2023, the United States Senate confirmed Martin O'Malley as Commissioner of the Social Security Administration. Thus, the Court substitutes O'Malley for his predecessor, Kilolo Kijakazi. *See* FED. R. CIV. P. 25(d)(1).

Commissioner's decision.[2]

## I.    STATUTORY FRAMEWORK

The Social Security Act establishes the framework for determining who is eligible to receive Social Security benefits. *Martin v. Sullivan*, 894 F.2d 1520, 1530 (11th Cir. 1990). In making a benefits determination, an ALJ employs a five-step process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or medically equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a); 20 C.F.R § 416.920(a)(4). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of not disabled." *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3] A claimant bears the burden of proof through step four. *See Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996). The burden shifts to the Commissioner at step five. *Id.*

To perform the fourth and fifth steps, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th

---

[2] Under 28 U.S.C. § 636(c), the parties have consented to the undersigned Chief United States Magistrate Judge conducting all proceedings and entering final judgment in this appeal. Pl.'s Consent (Doc. 11); Def.'s Consent (Doc. 10).

[3] *McDaniel* is an SSI case. SSI cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 875 n.* (11th Cir. 2012) (per curiam) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

Cir. 2004). A claimant's RFC is what the claimant can still do—despite her impairments—based on the relevant evidence within the record. *Id.* The RFC may contain both exertional and non-exertional limitations. *Id.* at 1242-43. Considering the claimant's RFC, the ALJ determines, at step four, whether the claimant can return to past relevant work. *Id.* at 1238. If a claimant cannot return to past work, the ALJ considers, at step five, the claimant's RFC, age, education, and work experience to determine if there are a significant number of jobs available in the national economy she can perform. *Id.* at 1239. To determine if a claimant can adjust to other work, the ALJ may rely on (1) the Medical Vocational Guidelines ("Grids")[4] or (2) the testimony of a vocational expert ("VE").[5] *Id.* at 1239-40.

## II.   STANDARD OF REVIEW

A federal court's review of the Commissioner's decision is limited. A court will affirm the Commissioner's decision if the factual findings are supported by substantial evidence and the ALJ applied the correct legal standards. *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)). A court may reverse the Commissioner's final decision when it is not supported by substantial evidence, or the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). A court is required to give deference to factual findings, with close

---

[4] The Grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. *See* 20 C.F.R. pt. 404 subpt. P, app. 2. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

[5] A vocational expert is an "expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips*, 357 F.3d at 1240.

scrutiny to questions of law. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).

For purposes of judicial review, "[s]ubstantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Despite the limited nature of review, a court must scrutinize the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986). However, a court may not decide the facts anew or substitute its judgment for that of the Commissioner. *Cornelius*, 936 F.2d at 1145.

## III.    ADMINISTRATIVE PROCEEDINGS

Upshaw was 60 years old on her alleged disability onset date. Tr. 178, 179. She has a ninth-grade education and previous work experience as a machine operator and assembler. Tr. 417-18. Upshaw alleged disability due to fibromyalgia, arthritis, multiple sclerosis, skin cancer, spinal issues, blindness or poor vision, muscle cramps and spasms, a pinched nerve in her left hip, a hole in her intestines, and issues with her veins. Tr. 416.

In the administrative proceedings, the ALJ made the following findings with respect to the five-step evaluation process for Upshaw's disability determination. At step one, the ALJ found Upshaw has not engaged in substantial gainful activity since her alleged onset date. Tr. 20. At step two, the ALJ found Upshaw suffers from the following severe impairments: right carpal tunnel syndrome; venous insufficiency/venous hypertension; history of multiple sclerosis; a body mass index at obesity level; and degenerative disc disease of the cervical and lumbar spine. Tr. 20-23. At step three, the ALJ found Upshaw

does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 23-24.

The ALJ then determined Upshaw's RFC, finding she has the capacity to perform a reduced range of light work. Tr. 24-33. At step four, the ALJ found Upshaw could perform some of her past relevant work, including the positions of assembler, weaving machine operator, and card machine operator. Tr. 33-35. At step five, the ALJ found Upshaw was not disabled from her alleged onset date through the decision date. Tr. 35.

## IV.   UPSHAW'S ARGUMENTS

Upshaw presents three issues for the Court's review:

(1) Whether the ALJ failed to comply with his legal duty as outlined in 20 C.F.R. § 404.1520c;

(2) Whether the Appeals Council erred by failing to consider Upshaw's new and material evidence; and

(3) Whether the ALJ's RFC finding is based on substantial evidence.

Pl.'s Br. (Doc. 15) at 1. As explained below, the undersigned finds that the ALJ did not commit reversible error as to any of these issues raised.

## V.   ANALYSIS

### 1.   Whether the ALJ failed to comply with his legal duty as outlined in 20 C.F.R. § 404.1520c.[6]

---

[6] Twenty C.F.R. § 404.1520c outlines how the Commissioner examines medical opinions and prior administrative findings for claims filed on or after March 27, 2017. *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017). Upshaw filed her claim on June 17, 2019, so these revised regulations apply. *See* 20 C.F.R. § 404.1520c.

A medical opinion is a statement from a medical source about what a claimant can still do despite her impairments. 20 C.F.R. § 404.1513(a)(2). When a medical source provides a medical opinion, an ALJ must determine the persuasiveness of the opinion by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(a), (c). Supportability and consistency are the "most important" factors considered by the ALJ. 20 C.F.R. § 404.1520c(a); *Simon v. Kijakazi*, 2021 WL 4237618, at *3 (M.D. Fla. Sept. 17, 2021). As such, the ALJ must articulate how these factors were considered in evaluating a medical source's opinion. *See* 20 C.F.R. § 404.1520c(a)-(c); *see also Works v. Saul*, 2021 WL 690126, at *15 (N.D. Ala. Feb. 23, 2021) (While an ALJ need not articulate how he applied each factor to the medical source opinion, the ALJ must state more than broad conclusions, at least with respect to supportability and consistency.). The ALJ may—but is not required to—explain how he considered the other remaining factors. *Nix v. Saul*, 2021 WL 3089309, at *6 (N.D. Ala. July 22, 2021) (citing 20 C.F.R. § 404.1520c(b)(2)).

### a. State Agency Medical Consultants

The ALJ found the opinions of Dr. Robert Heilpern and Dr. Krishna Reddy—both state agency medical consultants—generally persuasive. Tr. 30. Both physicians opined that Upshaw could perform light exertion, which allows Upshaw to lift/carry 20 pounds occasionally and 10 pounds frequently; does not limit her postural maneuvers except for climbing ladders/ropes/scaffolds; permits her to frequently reach overhead with her

6

bilateral upper extremities; and requires her to avoid all exposure to hazards. Tr. 30, 159-61, 173-75, 194-97, 214-17.

In finding these medical opinions generally persuasive, the ALJ reasoned that Dr. Heilpern and Dr. Reddy's opinions were "supported with well-reasoned explanation with reference to specific evidence of record" and "consistent with the evidence, including [Upshaw's] course of treatment and response to treatment, the longitudinal physical examination findings, the diagnostic testing, and many of [Upshaw's] own self-reported activities of daily living," including her report that she could cook several meals a day, do dishes three times a day, do laundry, sweep the floor, shop in stores, and attend church. Tr. 26, 30, 440, 444-46, 457-61. Further, the ALJ found the opinions persuasive because they were "consistent with each other." Tr. 30.

The Court finds that the ALJ evaluated both the supportability and consistency of Dr. Heilpern and Dr. Reddy's medical opinions, as he was required to do under the new regulations. The ALJ's citations to evidence in the record provide substantial evidence to support his conclusion that the opinions were generally persuasive. Thus, the ALJ did not err in his evaluation of these opinions.

### b. Dr. Williams

The ALJ found the medical opinion of Dr. Williams—a consultative examiner who examined Upshaw on September 21, 2019—"somewhat partially persuasive." Tr. 30, 796. Dr. Williams opined that Upshaw could lift/carry 20 pounds occasionally and 10 pounds frequently, sit for 6 hours in an 8-hour workday, and was unrestricted in her ability to stoop, crouch, kneel, and crawl. Tr. 30, 801-02. Dr. Williams further opined that Upshaw could

only stand/walk for 2 hours in an 8-hour workday and only occasionally climb, balance, reach, handle, and finger. Tr. 30, 801-02.

In finding the opinion somewhat partially persuasive, the ALJ reasoned that the additional limitations imposed by Dr. Williams outside of Upshaw's RFC were not well supported and were inconsistent with the evidence. Tr. 30. Specifically, the ALJ noted that Dr. Williams's opinion that Upshaw could only stand or walk for 2 hours in an 8-hour workday conflicted with the state agency physical assessments at the initial and reconsideration levels, which were conducted more recently than Dr. Williams's assessment. Tr. 30. The ALJ also reasoned that the standing/walking limitations imposed by Dr. Williams were not consistent with the longitudinal treatment records, which reflected Upshaw's report that she "walked a mile yesterday" in February 2021 and that, in November 2021, she walked in the mornings because her pain was better. Tr. 30. Finally, the ALJ noted that Dr. Williams's opinion was not consistent with Upshaw's records from June 2019 where she was cleared to return to work that required her to stand from 10-12 hours a day in a production position. Tr. 30.

As for Dr. Williams's limitations regarding Upshaw's ability to use her hands, the ALJ found that the opinion was not supported by Dr. Williams's own objective findings and not consistent with diagnostic testing, including EMG/nerve conduction studies that found Upshaw's carpal tunnel to be "very mild." Tr. 30-31. The ALJ also noted that Dr. Williams's opinion was not consistent with Upshaw's reports of daily living, where she stated that she washed dishes three times a day. Tr. 30.

Based on the ALJ's reasoning as described above, the Court finds that the ALJ evaluated both the supportability and consistency of Dr. Williams's medical opinion, as he was required to do under the regulations. The ALJ's citations to the evidence in the record provide substantial evidence to support his conclusion that Dr. Williams's opinion was only somewhat partially persuasive. Thus, the ALJ did not err in his evaluation of Dr. Williams's opinion.

### c.  Dr. Ellis

As for the medical opinion of Dr. Ellis—one of Upshaw's treating physicians—the ALJ found his opinion "not persuasive." Tr. 31-32. Dr. Ellis opined that Upshaw could only walk about one-fourth of a block without rest and that she could only stand for five-minutes at a time. Tr. 927. He further found that Upshaw could sit, stand, and walk for less than 2 hours a day; rarely lift less than 10 pounds; would need to elevate her feet for 45-60 minutes every 2-3 hours; and that her pain would interfere constantly with her attention and concentration. Tr. 927-29. He indicated that Upshaw would not be able to perform any postural activities; would be unable to reach, grasp, turn, or twist objects; and would have no fine motor skills. Tr. 929-30.

In finding the opinion not persuasive, the ALJ noted that Dr. Ellis's imposed limitations were "extreme and disproportionate to the longitudinal findings noted by primary care in the actual longitudinal treatment records." Tr. 31. By way of example, the ALJ noted that primary care exams in December 2019 and March 2020—immediately before and after Dr. Ellis completed the form—were essentially within normal limits except for Upshaw's BMI. Tr. 31. The ALJ also found that Dr. Ellis's limitations regarding

9

Upshaw's ability to concentrate conflicted with Upshaw's report in November 2019 that she could pay attention "as long as needed." Tr. 31. And as for the limitation that Upshaw could only sit for 5 minutes at a time, the ALJ concluded that Dr. Ellis "set[] forth absolutely no explanation for this limitation" and he further found it inconsistent with other evidence, including the opinions of the state agency consultants. Tr. 32. Limitation by limitation, the ALJ continued to specifically explain why Dr. Ellis's opinion conflicted with or was not supported by other evidence in the record, and he provided specific evidence in the record supporting his conclusion. Tr. 31-32.

Based on the ALJ's reasoning as described above, the Court finds that the ALJ evaluated both the supportability and consistency of Dr. Ellis's medical opinion, as he was required to do under the regulations. The ALJ's citations to the evidence in the record provide substantial evidence to support his conclusion that Dr. Ellis's opinion was not persuasive. Thus, the ALJ did not err in his evaluation of Dr. Ellis's opinion.

### d.  Upshaw's Argument

Upshaw argues that the ALJ erred by finding the opinions of Dr. Heilpern and Dr. Reddy "persuasive and subsequently holding other doctors to the standard of these two state agency medical examiners." Pl.'s Reply (Doc. 19) p. 1. Specifically, Upshaw contends that the ALJ failed to acknowledge that four doctors found her to be more limited than the two state agency examiners, and that the ALJ's failure to acknowledge that more medical sources agreed with findings opposite those of the state agency examiners supports the conclusion that the ALJ did not properly consider the supportability and consistency factors in assessing the medical opinions. *Id*. at 2. Thus, Upshaw argues that the ALJ did

not apply the correct legal standards and reached a conclusion that is not based on a review of the evidence as a whole. *Id*. at 2.

But as set forth above, the ALJ applied the correct standards under the regulations for considering the medical opinions of Drs. Heilpern, Reddy, Ellis, and Williams. Indeed, the ALJ made specific findings as to the supportability and consistency of the opinions, which he was required to do. Notably, the ALJ did not rely solely on the opinions of the state agency consultants when finding the opinions of Dr. Williams somewhat partially persuasive and Dr. Ellis not persuasive. Instead, the ALJ provided examples of how the opinions of Dr. Williams and Dr. Ellis conflicted with other medical evidence or were otherwise unsupported by the medical record as a whole. Thus, the ALJ did not hold Dr. Williams or Dr. Ellis "to the standard" of Dr. Heilpern and Dr. Reddy, as Upshaw contends, but instead set forth independent reasoning as to why their opinions were only somewhat partially or not persuasive.

Further, by arguing that the ALJ should have acknowledged that four other doctors found Upshaw more limited than Dr. Heilpern and Dr. Reddy, Upshaw essentially asks the Court to reweigh the evidence and conclude that the ALJ should have accepted the stricter limitations imposed by the non-state agency medical examiners. The Court declines this invitation, as the ALJ's treatment of each medical opinion complies with the regulations and is supported by substantial evidence. *See Phillips*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]."). As such, the Court finds no error in the ALJ's treatment of the medical opinions in the record.

11

### 2. The Appeals Council properly considered Upshaw's additional evidence.

Upshaw argues that additional evidence she submitted to the Appeals Council—specifically a PRFC Questionnaire ("Questionnaire") from NPC Katherine Wallace—warrants remand. Pl.'s Br. (Doc. 15) pp. 10-13; Reply (Doc. 19) pp. 2-5. With a few exceptions, a claimant is allowed to present additional evidence related to her disability at each stage of the Social Security administrative process. *See* 20 C.F.R. § 404.900(b). If a claimant presents additional evidence to the Appeals Council after an ALJ has rendered an unfavorable decision regarding disability, the Appeals Council must consider the additional evidence if it "is new, material, and relates to the period on or before the date of the hearing decision." 20 C.F.R. § 404.970(a)(5); *Hunter v. Soc. Sec. Admin, Comm'r*, 705 F. App'x 936, 939 (11th Cir. 2017). Evidence is new when it is noncumulative of the evidence before the ALJ. *Beavers v. Soc. Sec. Admin., Comm'r*, 601 F. App'x 818, 821 (11th Cir. 2015). Evidence is material if there is a reasonable probability that it would change the administrative results. *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987). And evidence is chronologically relevant when "it relates to the period on or before the date of the [ALJ's] hearing decision." *McCullars v. Comm'r Soc. Sec. Admin.*, 825 F. App'x 685, 692 (11th Cir. 2020) (per curiam) (quoting 20 C.F.R. § 416.1470).

"[W]hen the Appeals Council erroneously refuses to consider [new] evidence, it commits legal error and remand is appropriate." *Washington v. Soc. Sec. Admin, Comm'r*, 806 F.3d 1317, 1321 (11th Cir. 2015). The Appeals Council's decision is subject to judicial review under sentence four of section 405(g)). *Ingram v. Comm'r of Soc. Sec. Admin.*, 496

F.3d 1253, 1265 (11th Cir. 2007). Pursuant to a sentence four remand, a reviewing court must determine if the new, material, and chronologically relevant evidence submitted "renders the denial of benefits erroneous." *Id.* at 1262. For a court to find the denial of benefits erroneous, the plaintiff must show that "in light of the new evidence submitted to the Appeals Council, the ALJ's decision to deny benefits is not supported by substantial evidence[.]" *Timmons v. Comm'r of Soc. Sec.*, 552 F. App'x 897, 902 (11th Cir. 2013) (citing *Ingram*, 496 F.3d at 1266-67). On the other hand, if the "additional evidence [is] either cumulative of the evidence before the ALJ or [is] not chronologically relevant, and none of it undermine[s] the substantial evidence supporting the ALJ's decision," the Commissioner's decision is due to be affirmed. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 785 (11th Cir. 2014).

Here, Upshaw submitted a Questionnaire that was completed by NPC Wallace on July 12, 2022. Tr. 46-50. NPC Wallace opined, *inter alia*, that Upshaw would be limited in her ability to sit and stand/walk for less than 2 hours in an 8-hour workday. Tr. 48. She also opined that Upshaw could not walk for one block without severe pain or needing to rest; would need to take breaks every hour; would be severely limited in stooping, crouching, and climbing; would have significant limitations reaching, handling, or fingering; and would be absent from work "more than four days per month[.]" Tr. 48-50. Upshaw argues that, had the Appeals Council considered the PRFC, "it would have discovered that Ms. Wallace's opinion is strongly supported by the opinion of Dr. Ellis (along with the three doctors who agreed 'in full' with Dr. Ellis)." Pl.'s Br. (Doc. 15) p.

13. Upshaw then points to the limitations prescribed by NPC Wallace that mirror the limitations prescribed by Dr. Ellis. *Id.*

Assuming that the Questionnaire is chronologically relevant, the Court finds that it does not render the denial of benefits erroneous. As explained above, the ALJ properly discounted the opinion of Dr. Ellis by finding that his opinion was not consistent with or supported by the record. Thus, had the ALJ considered the opinion of NPC Wallace, which imposes similar limitations to Dr. Ellis, the opinion does not undermine the substantial evidence supporting the ALJ's decision to reject those limitations. And while Upshaw contends that NPC Wallace's opinion would have bolstered the opinion of Dr. Ellis and the opinions of the other doctors imposing harsher restrictions than adopted by the ALJ, Upshaw has not shown—and the Court is not convinced—that an additional opinion supporting harsher restrictions would have changed the ALJ's RFC determination and ultimately the outcome of the administrative proceeding. Because the Court finds that the Questionnaire does not undermine the substantial evidence that supports the ALJ's conclusion and the denial of benefits is not erroneous, the Appeals Council did not err by declining to grant review based on NPC Wallace's Questionnaire.

### 3.  The ALJ's RFC is supported by substantial evidence.

A claimant's RFC is the most she can still do despite the physical and mental limitations resulting from her impairment. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). The final responsibility for assessing a claimant's RFC rests with the ALJ, based on all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3), 404.1546, 416.946. Relevant medical and other

evidence includes medical history, medical signs and laboratory findings, the effect of treatment including limitations or restrictions imposed by the mechanics of treatment, daily activities, lay evidence, recorded observations, and medical source statements. SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996).

Upshaw argues that the ALJ failed to account for her right carpal tunnel syndrome and her venous insufficiency in formulating her RFC. Pl.'s Br. (Doc. 15) pp. 14-16. She points to Mayo Clinic literature setting forth symptoms that a person with carpal tunnel may experience and suggesting treatments that may benefit a person with venous insufficiency. *Id*. Crucially, though, she does not point to any evidence showing that *she* experienced the symptoms listed or that *she* would benefit from the treatments suggested. *Id*. Instead, Upshaw notes that, based on the Mayo Clinic literature, "it is *likely*" that her ability to handle and/or finger would be limited due to her carpal tunnel syndrome. *Id*. at 14 (emphasis added). Similarly, Upshaw states that, according to the Mayo Clinic literature, exercise, leg raising, and avoiding long periods of sitting or standing are beneficial for a person with venous insufficiency. *Id*. at 15. But because Upshaw merely points to "evidence" of what someone else with her conditions experienced and found helpful in alleviating symptoms, she has not shown that her impairments required the ALJ to account for additional limitations in her RFC for either her carpal tunnel syndrome or her venous insufficiency.

The ALJ's statement that Upshaw did not have an impairment or combination of impairments that established disability, coupled with his thorough discussion of Upshaw's impairments during the RFC determination, is sufficient to conclude that the ALJ generally

considered the combined effects of Upshaw's impairments. *See Jones v. Bowen*, 810 F.2d 1001, 1006 (11th Cir. 1986) (holding that the ALJ's explicit statement that the claimant did not suffer from a combination of impairments rendering him disabled, coupled with an "exhaustive consideration" of the claimant's impairments in formulating the RFC at step four was sufficient to satisfy the ALJ's duty to make specific and well-articulated findings as to the effect of the combination of impairments). Upshaw has not shown that her right carpal tunnel and venous sufficiency required additional restrictions in her RFC. Accordingly, the ALJ's RFC is supported by substantial evidence and the ALJ did not err.

## VI.   CONCLUSION

As explained above, the undersigned finds that the ALJ did not commit reversible error and that substantial evidence supports the Commissioner's decision. Accordingly, it is

ORDERED that the Commissioner's decision is AFFIRMED. A separate judgment will issue.

DONE this 22nd day of February, 2024.

Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE